NUMBER 13-00-732-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
___________________________________________________________________

THE COASTAL CORPORATION,                                         Appellant,

v.

DANIEL TORRES, WILLIAM BOURLAND, 
AND DAVID NATIVIDAD,                                                  Appellees.
___________________________________________________________________

On appeal from the 319th District Court
of Nueces County, Texas.
__________________________________________________________________

O P I N I O N

Before Chief Justice Valdez and Justices Hinojosa and Rodriguez
Opinion by Justice Rodriguez

         This is a personal injury case that involves a refinery explosion caused by a
defect in a pressure vessel. Appellees, Daniel Torres, William Bourland, and David
Natividad, asserted a negligence claim against appellant, The Coastal Corporation
(Coastal). Following a jury trial, the trial court entered judgment against Coastal. By
five issues, Coastal contends appellees’ theory of recovery is not recognized in Texas;
the evidence is legally and factually insufficient to support such theory, if recognized;
the trial court erred in admitting expert testimony; the award of actual damages is
excessive; and prejudgment interest on future damages should not have been awarded. 
We reverse and render.
I. BACKGROUND
         An explosion occurred in May 1999 at a Corpus Christi refinery owned and
operated by Coastal Refining & Marketing, Inc. (Coastal Refining).


 A pressure vessel
ruptured, releasing a large amount of naphtha that found an ignition source and
exploded. Appellees, who were Coastal Refining employees, received serious injuries
in the accident. The rupture occurred as a result of the vessel’s walls thinning from
internal corrosion.
         Appellees sued appellant for negligence and gross negligence alleging that
“through central budgetary authority exercised by Coastal’s corporate officers in
Houston, Texas, Coastal . . . assumed control over maintenance, turnaround, and
inspection matters at the plant.” In response to a broad-form negligence question, the
jury found Coastal’s negligence proximately caused appellees’ injuries.


 The court’s
charge defined the terms “negligence,“ ”ordinary care,” and “proximate cause.”


 
Moreover, the detailed instructions accompanying the question provided, in relevant
part:
In order to find negligence on the part of The Coastal Corporation,
you must find all of the following: (1) The Coastal Corporation had the
right to control the budget and/or expenditures of Coastal Refining &
Marketing, Inc.; (2) The Coastal Corporation exercised that right of
control through a person who was acting as a director, officer, employee
or agent of The Coastal Corporation; and (3) The Coastal Corporation’s
exercise of that control amounted to negligence.

The jury answered, “Yes,” as to each appellee and awarded actual damages totaling
$122.5 million.
         By its first issue, Coastal challenges appellees’ theory of liability in this case. 
It contends Texas does not recognize a cause of action against a parent company for
negligent control of the budget of its subsidiary. Because appellees have waived any
premises liability, Coastal argues that appellees are left with theories of recovery that
have no support in Texas law.
II. ANALYSIS
          Appellees assert that Coastal’s duty arises from traditional and mainstream
principals of tort law. Coastal, however, contends Texas courts have not accepted
any theory of recovery urged by appellees.
A. Negligent Control of Subsidiary’s Budget 
         Appellees complain of Coastal’s actions in allegedly taking control of the safety
budget and expenditures for the refinery and imposing policies that created strict
procedures over its subsidiary’s access to funds. Because Coastal was allegedly
negligent through its own conduct in creating that management scheme and in
withholding funds for inspectors and safety maintenance, appellees contend Coastal
is liable. 
         Appellees assert Texas case law provides the mainstream duty that Coastal
owed appellees, that being a duty arising from its alleged negligent control over
budgets and expenditures. Relying on Redinger v. Living, Inc., 689 S.W.2d 415, 417-18 (Tex. 1985), and cases following Redinger, to support their control-based liability
theory, appellees contend Coastal, by limiting expenditures, controlled and influenced
its subsidiary in a way that directly resulted in appellees’ injuries. The facts, however,
underlying the Redinger line of cases are distinguishable from the present facts.
         In Redinger, the court reviewed supervisory control over construction work that
caused the injury, an activity conducted on the premises. See id. Redinger adopted
section 414 of the Restatement (Second) of Torts, which imposes liability based on
control of another’s work activities. Section 414 provides:
One who entrusts work to an independent contractor, but who retains
control of any part of the work, is subject to liability for physical harm to
others for whose safety the employer owes a duty to exercise reasonable
care, which is caused by his failure to exercise his control with
reasonable care.

Id. at 418 (quoting Restatement(Second) of Torts § 414 (1977)). Appellees also rely
on: (1) Read v. Scott Fetzer Co., 990 S.W.2d 732, 736 (Tex. 1998) (control over
specific details of the work); (2) Exxon Corp. v. Tidwell, 867 S.W.2d 19, 22-23 (Tex.
1993) (in case alleging negligence in maintaining safe workplace, focus must be on
specific control over safety and security of premises, rather than more general right of
control over operations); and (3) Humble Oil & Ref. Co. v. Martin, 148 Tex. 175, 178,
222 S.W.2d 995, 998 (1949) (control over details of station operations including strict
system of financial control and supervision).


 From the Redinger line of cases, it is
apparent that liability is imposed when there is specific control over the activity that
caused the accident. See Coastal Marine Serv., Inc. v. Lawrence, 988 S.W.2d 223,
226 (Tex. 1999) (per curiam) (control over injury-producing event); Hoechst-Celanese
Corp. v. Mendez, 967 S.W.2d 354, 356-58 (Tex. 1993) (control over details of work);
Koch Ref. Co. v. Chapa, 11 S.W.3d 153, 155-56 (Tex. 1999) (employer must have
some degree of control over manner in which work done); Elliott-Williams Co. v. Diaz,
9 S.W.3d 801, 804 (Tex. 1999) (for general contractor to be liable for independent
contractor’s acts, it must have right to control means, methods, or details of
independent contractor’s work); see also Dow Chemical Co. v. Bright, 89 S.W.3d 602,
611 (Tex. 2002) (mere promulgation of safety policies does not establish actual
control over independent contractor).
         In the present case, appellees assert negligent control of the budget, not
negligent control over details of specific operational activities. We cannot conclude
the cited authority provides support for appellees’ argument. Because appellees have
provided us with no authority, and we find none, where a Texas court has imposed
liability against a parent company, under mainstream principles of tort law, for
negligent control of such remote conduct as budgeting activities, we conclude
appellees’ control-based negligence theory of recovery fails.
B. Affirmative Conduct/Undertaking Liability
         Coastal also challenges the viability of any affirmative conduct theory of
recovery appellees now argue on appeal.
         Appellees assert Coastal’s tort duty flows from the mainstream duty rule that
a party must use reasonable care in its affirmative conduct. Appellees construe the
affirmative conduct about which they complain as Coastal’s choice of a business
management plan that allegedly gave Coastal control over expenditures and budgets. 
They describe this theory as one closely akin to an “undertaking liability.”
         The Texas Supreme Court discussed the undertaking theory of liability in
Torrington Co. v. Stutzman, 46 S.W.3d 829, 837 (Tex. 2000). The Torrington court
concluded undertaking liability requires the submission of the following specific duty
predicates:
(1) [the defendant] undertook to perform services that it knew or should
have known were necessary for the plaintiffs’ protection, (2) [the
defendant] failed to exercise reasonable care in performing those
services, and either (3) [a third party charged with protecting the
plaintiffs] relied upon [the defendant’s] performance, or (4) [the
defendant’s] performance increased the plaintiffs’ risk of harm. 
Id. at 838.


 While the trial court’s charge in Torrington included the usual definitions
of “negligence,” “ordinary care,” and “proximate cause,” it gave the jury no further
instructions or definitions applicable to the negligence question. Id. Because the
charge did not submit the necessary duty predicates for a voluntary undertaking claim,
and because neither plaintiff nor the court of appeals had the guidance of Torrington
at the time the case was tried, the supreme court remanded the undertaking claim to
the trial court. Id. at 841.
         In the present case, the above duty predicates were not submitted in the trial
court’s charge. Unlike Torrington, however, the court’s charge did include the
following predicates which appellees assert gave rise to a legal duty: (1) Coastal had
the right to control the budget and/or expenditures of Coastal Refining & Marketing,
Inc.; and (2) Coastal exercised that right of control through a person who was acting
as a director, officer, employee or agent of Coastal. Appellees assert these elements
were submitted in an effort to prove that, by refusing to budget necessary funds,
Coastal chose to control the “safety duty” that the refinery owed its employees. 
However, the actions about which appellees complain are not affirmative actions of
control undertaken to provide services to protect another. Appellees are complaining
of refusals or failures to budget. This is the antithesis of an affirmative course of
action. See Peterson v. Mut. Sav. Inst., 646 S.W.2d 327, 329 (Tex. App.–Austin
1983, no writ) (plaintiff must show an “affirmative undertaking . . . for the benefit of
the injured person”) (emphasis in original); see also Fort Bend County Drainage Dist.
v. Sbrusch, 818 S.W.2d 392, 396-96 (Tex. 1991) (mere promise to repair bridge with
neither performance nor reliance imposes no tort obligation on promissor); Colonial
Sav. Ass’n v. Taylor, 544 S.W.2d 116, 119-20 (Tex. 1976) (jury found insurance
company had undertaken to provide fire insurance coverage for house that burned
down and, thus, had assumed duty to exercise reasonable care when purchasing
coverage); Johnson v. Abbe Eng’g Co., 749 F.2d 1131, 1133 (5th Cir. 1984) (parent
corporation’s duty may be established by showing it undertook inspection of entire
plant). Accordingly, we conclude Coastal’s alleged actions do not comprise affirmative
conduct akin to an affirmative undertaking pursued for the benefit of the injured
person. Moreover, appellees have provided us with no authority, and we find none,
where a Texas court has, under mainstream principles of tort law, construed a parent
company’s refusal or failure to budget as an affirmative undertaking and imposed
liability against a parent company. Thus, appellees’ affirmative conduct theory also
fails.
C. Negligent Activity
         More accurately, appellees’ theory of recovery is a “negligent activity” claim,
the term that the Texas Supreme Court uses to distinguish activity-based torts from
premises-liability claims. See, e.g., Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex.
1992); see also Alamo Lumber Co. v. Pena, 972 S.W.2d 800, 804 (Tex. App.–Corpus
Christi 1998, pet. denied) (citing Clayton W. Williams, Jr., Inc. v. Olivo, 952 S.W.2d
523, 527 (Tex. 1997)) (negligent activity and premises defect theories may coexist,
depending on facts of particular case).
         Texas law, however, requires that a “negligent activity” be a contemporaneous
cause of the accident. See Timberwalk Apartments, Partners, Inc. v. Cain, 972
S.W.2d 749, 753 (Tex. 1998) (claim for inadequate security is premises defect claim,
not activity claim); Keetch, 845 S.W.2d at 264 (affirmative activity of spraying plants
with water which caused floor to become slippery is premises claim not negligent
activity); see also Dallas Mkt. Ctr. Dev. Co. v. Liedeker, 958 S.W.2d 382, 383-84
(Tex. 1997) (muffling elevator gate alarm resulted in premises claim, not general claim
for negligent activity); H.E. Butt Grocery Co. v. Warner, 845 S.W.2d 258, 259 (Tex.
1992) (“failure to pre-bag chicken theory” rejected by supreme court as an
impermissible negligent-activity claim when plaintiff fell in puddle of chicken blood,
water, and other fluids).
         The accident made the basis of this suit did not occur as a contemporaneous
result of any of the conduct appellees allege: namely Coastal’s original purchase of the
refinery premises; Coastal’s transfer of the premises to its subsidiary, Coastal Refining;
or Coastal’s alleged budgeting activities. Thus, under the facts of this case, appellees
cannot recovery under a negligent activity theory.
D. Premises Defect
         Coastal further argues this case is strictly a classic premises defect case arising
out of a failure of the walls of a pressure vessel that were too thin to be operated
safely.


 See Cain, 972 S.W.2d at 753; Liedeker, 958 S.W.2d at 385. Appellees
elected, however, not to seek recovery based on a premises defect. Therefore, relief,
if any, on this basis has been waived, and we need not address it on appeal.



         Accordingly, we sustain Coastal’s first issue.
         Because of our disposition of Coastal’s first issue, we need not address the
remaining issues. Tex. R. App. P. 47.1.
III. CONCLUSION
         Appellees have masterfully presented their arguments in an attempt to obtain
relief under a negligence theory bounded by traditional and mainstream principles of
tort. We must conclude, however, that Texas law, as it exists today, imposes no
liability on a parent company to approve budgets for its subsidiaries in order to assure
that the subsidiaries repair defects on their premises.


 Moreover, the Texas Supreme
Court has often demonstrated its unwillingness to expand tort duties in Texas. See
e.g., Mellon Mortgage Co. v. Holder, 5 S.W.3d 654, 658 (Tex. 1999) (declining to
create any “universal duty” on premises owners to prevent criminal activity on their
property); Van Horn v. Chambers, 970 S.W.2d 542, 546-47 (Tex. 1998) (declining
to impose a duty on physicians to protect third persons from acts committed by
patients); Smithkline Beecham Corp. v. Doe, 903 S.W.2d 347, 353 (Tex. 1995)
(declining to recognize a new common law duty after weighing the likelihood of injury
against the utility of the defendant’s conduct, the burden of preventing the injury, and
the effect of placing that burden on the defendant).
         Accordingly, the judgment of the trial court is reversed and rendered that
appellees take nothing.                                                     
                                                                        NELDA V. RODRIGUEZ
                                                                        Justice

Opinion delivered and filed
this 25th day of March, 2004.