Affirmed and Opinion filed August 22, 2002









Affirmed and Opinion filed August 22, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-00-00098-CV

____________

 

CHARLES FINLEY MILLER and BERRY ROBERTS, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF LINDA ROBERTS, DECEASED,
Appellants

 

V.

 

GENERAL MOTORS CORPORATION, ROPER MOTOR COMPANY, INC., JIMMY
BANKS, EDWIN DEAN LAWRENCE, and WILL ALLEN LYNCH,
Appellees

 



 

On
Appeal from the 55th District Court

Harris County, Texas

Trial
Court Cause No. 95-57444

 



 

O
P I N I O N

Appellant
Berry Roberts appeals from a take-nothing judgment in a products-liability
lawsuit against General Motors Corporation (AGM@).  In seven issues,
Roberts claims the trial court erred by (1) granting GM partial summary
judgment based on the statute of limitations on several of Roberts=s
claims and (2) granting GM a no-evidence summary judgment on Roberts=s
remaining claims.  We affirm.








                            I.  Factual
and Procedural Background

On
November 24, 1993, Berry Roberts and her mother, Linda, were passengers in a
Pontiac Firebird that collided head-on with a Chevrolet Silverado near
Huntsville, Texas.  Although Berry
Roberts sustained only minor injuries, her mother suffered severe injuries and
later died.  On November 22, 1995,
Roberts, both in her individual capacity and as representative of the Estate of
Linda Roberts, filed suit against GM, the manufacturer of both the Firebird and
the Silverado.[1]  GM was not served, however, until May
1996.  The lawsuit asserted claims for
strict products liability, negligence, and breach of express and implied
warranties.

On
April 28, 1997, GM filed a motion for partial summary judgment, contending that
Roberts=s
claims for strict liability and negligence, along with her breach-of-warranty
claim regarding the Silverado, were barred by limitations.  GM=s motion for summary judgment was set for submission on June
16, 1997.  Roberts did not respond, and
on June 18, the trial court granted the motion. 
On July 21, Roberts filed a Motion for New Trial, Reconsideration and
Rehearing in which she (1) offered an explanation for her failure to respond
and (2) set forth her defenses to GM=s motion for summary judgment. 
On September 11, 1997, the court signed a second order granting GM=s
motion for summary judgment and denying Roberts=s motion for new trial.








On
September 4, 1997, GM filed a no-evidence motion for summary judgment under
Texas Rule of Civil Procedure 166a(i) against Roberts=s
remaining claims.  GM=s
motion was originally set for submission on October 20, 1997.  After several resettings, the parties
ultimately agreed on a submission date of March 30, 1998.  Six days before submission, on March 24,
Roberts filed a motion for continuance requesting an additional two weeks for
her liability expert to complete an affidavit in response to the summary
judgment motion.  GM opposed the motion
for continuance.  On March 27, Roberts
filed a reply in support of its motion along with a APreliminary
Response@
to GM=s
motion for summary judgment.  On May 22,
1998, the trial court granted GM=s motion for summary judgment. 
The court ultimately entered a final judgment on October 29, 1999,
dismissing all claims against GM with prejudice.  This appeal followed.

                        II.  Partial
Summary Judgment B Limitations

In
her fifth, sixth, and seventh issues, Roberts challenges the partial summary
judgment in favor of GM based on the statute of limitations.  As the summary judgment movant, GM has the
burden to show that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).  We indulge every reasonable inference in
favor of the nonmovant and take all proof favorable to the nonmovant as
true.  Science Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Nixon, 690 S.W.2d at
548-49.

Actions
for personal injuries, including wrongful-death and survival actions, are
governed by the two-year statute of limitations.  Tex.
Civ. Prac. & Rem. Code Ann. ' 16.003 (Vernon Supp. 2002).  Roberts=s claims accrued on November 24, 1993, the date of the
accident.  Although Roberts filed her
lawsuit on November 22, 1995, barely within the two-year period, GM was not
served until six months later, on May 30, 1996. 
In its motion for summary judgment, GM argued Roberts is not entitled to
rely on her filing date for limitations purposes because she did not use diligence
in securing service.  The trial court
agreed.  Roberts claims she raised issues
of fact concerning (1) whether she exercised due diligence in serving GM and
(2) whether the statute of limitations was tolled because GM fraudulently
concealed Roberts=s claim.

                                                                              

 








                                      A.  Roberts=s Late-Filed Response








We
first address the question of whether we should consider Roberts=s
late-filed response to be part of the summary judgment record that was before
the trial court when it granted summary judgment.  GM=s motion for partial summary judgment was set for submission on
June 16, 1997.  Roberts did not respond,
and the court granted the motion.  One
month later, Roberts filed a AMotion for New Trial, Reconsideration and Rehearing,@
asserting her failure to respond was excused because her counsel had an oral
understanding with GM=s counsel that the submission date would be postponed.  Roberts further set forth arguments relating
to the grounds raised by GM in its summary judgment motion.  On September 11, the court entered a second
order granting GM=s motion.  Because the
court=s
earlier order granting partial summary judgment was interlocutory, the trial
court was free to change or modify it until the judgment became final.  See Rush v. Barrios, 56 S.W.3d
88, 98 (Tex. App.CHouston [14th Dist.] 2001, pet. denied).  In the text of its September 11 order, the
court also denied Roberts=s motion for new trial, but the court lined through language in
the order that would have denied Roberts=s request for AReconsideration and Rehearing@ of the court=s earlier summary judgment.[2]  We therefore conclude that the trial court
considered Roberts=s late-filed response in ruling on GM=s
motion for summary judgment.[3]  Accordingly, we will review Roberts=s
response as part of the summary judgment record.

                                                              B.  Due Diligence








In
her fifth issue, Roberts claims summary judgment was improper because GM did
not establish the absence of a fact issue as to her diligence in issuing
service.  To Abring
suit@
within the statute of limitations, a plaintiff must not only file suit within
the applicable limitations period but must also use diligence to have the
defendant served with process.  Gant
v. DeLeon, 786 S.W.2d 259, 260 (Tex. 1990) (per curiam).  The date of service relates back to the date
of filing only if the plaintiff exercises diligence in effecting service.  Id. 
The summary judgment evidence conclusively shows Roberts did not
diligently pursue service on GM, but rather intentionally delayed serving GM
until after she obtained service on other defendants.  In an affidavit attached to Roberts=s
summary judgment response, the office manager for Roberts=s
counsel admits Roberts made a tactical decision to serve the in-state
defendants first to prevent GM from removing the case to federal court.  However, once the limitations period has
passed, a plaintiff must use due diligence to procure service on the defendant
regardless of any reasons she may have for not wanting to do so.  Broom v. MacMaster, 992 S.W.2d 659,
665 (Tex. App.CDallas 1999, no pet.). 
To hold otherwise would eviscerate the long-established due-diligence
requirement and would ignore the goal of statutes of limitations to inform
defendants in a timely fashion of claims against them.  Id.; see also Burnett v. New
York Cent. R.R. Co., 380 U.S. 424, 428, 85 S. Ct. 1050, 1054 (1965) (AStatutes
of limitations are primarily designed to assure fairness to defendants. . .
.  [E]ven if one has a just claim it is
unjust not to put the adversary on notice to defend within the period of
limitation . . . .@).  We overrule Roberts=s
fifth issue.

                                                    C.  Fraudulent Concealment

In
her sixth issue, Roberts asserts she raised a fact issue regarding the doctrine
of fraudulent concealment.  Under this
doctrine, a defendant is estopped from relying on the statute of limitations
when the defendant fraudulently conceals the existence of a claim from a
plaintiff to whom the defendant is under a duty to make such a disclosure.  Borderlon v. Peck, 661 S.W.2d 907, 908
(Tex. 1983).  To toll limitations under
the doctrine of fraudulent concealment, a plaintiff must show the defendant (1)
actually knew a wrong occurred, (2) had a fixed purpose to conceal the wrong,
and (3) did conceal the wrong from the plaintiff.  Shah v. Moss, 67 S.W.3d 836, 841 (Tex.
2001).  To avoid summary judgment on
limitations, Roberts must raise a fact issue to support her
fraudulent-concealment assertion.  Id.

We
conclude fraudulent concealment does not apply in this case because GM was
under no legal duty to disclose the existence of a cause of action to
Roberts.  Without a fiduciary
relationship between the parties in this case, no such duty exists.  See Seibert v. General Motors Corp.,
853 S.W.2d 773, 778 (Tex. App.CHouston [14th Dist.] 1993, no writ).  Even if, as Roberts asserts, GM had a duty to
inform its customers of certain dangers regarding its seat belts, this duty to
warn is unrelated to any duty to disclose Roberts=s claims.  See id.  Because Roberts failed to demonstrate a duty
to disclose exists, she cannot rely on the doctrine of fraudulent
concealment.  We overrule Roberts=s
sixth issue.

                                                       D.  Motion for New Trial








In
her seventh issue, Roberts complains the trial court should have applied the
equitable test set forth in Craddock v. Sunshine Bus Lines, Inc., 134
Tex. 388, 133 S.W.2d 124 (1939), and granted her motion for rehearing or new
trial.  In Medina v. Western Waste
Industries, this court applied Craddock to a motion for new trial
following the granting of an unopposed motion for summary judgment.  959 S.W.2d 328, 330-31 (Tex. App.CHouston
[14th Dist.] 1997, pet. denied). 
Recently, the Texas Supreme Court expressly rejected the use of Craddock
in this context, at least where the nonmovant had notice of the hearing and an
opportunity to request either a continuance or leave to file an untimely
response.  See Carpenter v. Cimarron
Hydrocarbons Corp., 45 Tex. Sup. Ct. J. 1031, 1033, 2001 WL 1902793, at *3
(July 3, 2002).  Regardless of whether Carpenter
would be controlling under these facts, the trial court considered Roberts=s
late-filed response before entering a partial summary judgment order on
September 11, 1997.  Therefore, because
GM=s
motion for partial summary judgment on limitations was not unopposed, Craddock
does not apply.

Instead,
we review the trial court=s denial of Roberts=s motion for new trial for an abuse of discretion.  See Superior Packing, Inc. v.
Worldwide Leasing & Fin., Inc., 880 S.W.2d 67, 71 (Tex. App.CHouston
[14th Dist.] 1994, writ denied).  A trial
court abuses its discretion when its ruling is arbitrary, unreasonable, or
without reference to any guiding rules or legal principles.  K-Mart Corp. v. Honeycutt, 24 S.W.3d
357, 360 (Tex. 2000) (per curiam). 
Roberts=s only argument is that the trial court failed to apply the Craddock
standard when ruling on her motion for new trial.  Because Craddock is inapplicable, we
find no abuse of the trial court=s discretion.  Roberts=s
seventh issue is overruled.

                                   III.  No-Evidence
Summary Judgment








Next,
Roberts raises four issues regarding the granting of a no-evidence summary
judgment.  GM filed a motion for summary
judgment under Rule 166a(i) on September 4, 1997, against Roberts=s
claims for breach of express and implied warranties relating to the purchase of
the Firebird.  GM argued there was no
evidence raising a genuine issue of material fact on the elements of (1)
existence of a defect and (2) causation. 
After several agreed resettings, the motion was eventually set for
submission on March 30, 1998.  On March
24, Roberts filed a motion for continuance requesting a two-week delay of the
March 30 submission date, which GM opposed. 
Roberts filed a reply in support of her motion and a APreliminary
Response@
to GM=s
motion for summary judgment.  Attached to
this filing was an affidavit from Stephen M. Arndt, Roberts=s
expert, describing documents he needed to complete his affidavit in response to
GM=s
motion and offering a Apreliminary opinion . . . about the death of Ms.
Linda Roberts.@  On May 22, 1998, the
trial court granted summary judgment in favor of GM.  Roberts contends (1) the trial court erred in
refusing to grant her motion for continuance with respect to the March 30
submission date, (2) Roberts presented sufficient evidence on the elements of
her claim, (3) the trial court erred in refusing to grant her motion for
rehearing, and (4) Rule 166a(i) is unconstitutional as applied in this case.

                                                    A.  Motion for Continuance

In
her first issue, Roberts claims the trial court erred in refusing to grant a
continuance of the March 30 submission date. 
The granting or denial of a motion for continuance is within the trial
court=s
sound discretion, and we will not disturb the court=s
action on appeal unless the record discloses a clear abuse of that
discretion.  Villegas v. Carter,
711 S.W.2d 624, 626 (Tex. 1986).  Roberts
advances several arguments why her motion for continuance should have been
granted.  However, A[t]he
test for abuse of discretion is not whether, in the opinion of the reviewing
court, the facts present an appropriate case for the trial court=s
action.  Rather, it is a question of
whether the court acted without reference to any guiding rules and principles.@  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985). 
Accordingly, we review Roberts=s arguments not to determine if we would have ruled
differently, but to determine if the trial court=s ruling was arbitrary or unreasonable.  See id. at 242.








Roberts
first contends a no-evidence motion should never be heard as long as discovery
has not been completed.  However, Rule
166a(i) does not require that discovery must have been completed, only that
there was Aadequate time.@  Tex. R. Civ. P. 166a(i); Specialty Retailers, Inc. v.
Fuqua, 29 S.W.3d 140, 145 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).  Trial courts have discretion to determine
whether there has been adequate time for discovery in a particular case.  See id.  The adequacy of the time for discovery is
determined by Athe nature of the cause of action, the nature of the evidence
necessary to controvert the no-evidence motion, and the length of time the case
had been active in the trial court.@  Id.  By the time GM=s motion for summary judgment was submitted, Roberts=s
lawsuit had been on file for well over two years, and the motion itself had
been on file for nearly seven months. 
There is no indication Roberts did not have adequate time to discover
facts relating to the existence of a defect and whether a defect caused Linda
Roberts=s
injuries.  The trial court did not abuse
its discretion in concluding an adequate time for discovery had passed.

Next,
Roberts claims because this was her Afirst@ motion for continuance, the trial court abused its discretion
by not granting it.  We recognize that
other courts have concluded a court=s discretion is somewhat limited with respect to a party=s
first motion for continuance, particularly when the facts supporting the motion
are not controverted.  See, e.g., Verkin
v. Southwest Ctr. One, Ltd., 784 S.W.2d 92, 94 (Tex. App.CHouston
[1st Dist.] 1989, writ denied).  Even if
we were to adopt a similar rule, however, Roberts=s motion is undeniably not her first motion for
continuance.  GM=s
motion for summary judgment was originally set for submission on October 20,
1997.  Roberts filed at least two motions
for continuance before the motion for continuance that is the subject of this
appeal.  Each time, the parties agreed to
continue the submission date, and the motion was ultimately set for submission
on March 30, 1998.  We conclude Roberts
is not entitled to special treatment of her motion for continuance as a Afirst@
motion.








Roberts
asserts she has an absolute right to additional discovery.  While a party has a right to conduct
discovery, that right is not unlimited.  See
Able Supply Co. v. Moye, 898 S.W.2d 766, 773 (Tex. 1995) (ABoth
the plaintiffs and the defendants are entitled to full, fair discovery within
a reasonable period of time . . . .@) (emphasis added).  For
example, a motion for continuance seeking additional time for discovery must,
among other things, describe the evidence sought, explain its materiality, and
show the party requesting the continuance has used due diligence to obtain the
evidence.  Tex. R. Civ. P. 252; Grace v. Duke, 54 S.W.3d 338, 343
(Tex. App.CAustin 2001, pet. denied). 
Roberts failed to show that the additional discovery she sought was
material to the issues raised by GM=s no-evidence motion for summary judgment.

None
of the other reasons advanced by Roberts suggest the trial court abused its
discretion by denying her motion for continuance.  The occasional absence of Roberts=s
counsel during the time leading up to the date of submission, even if
uncontroverted, does not require the granting of a continuance.  Cf. Tex.
R. Civ. P. 253 (stating that absence of counsel is not good cause for a
continuance of a case that has been called to trial).  The fact that Roberts requested only a short
continuance does not deprive the trial court of its discretion in ruling on
Roberts=s
motion, particularly considering the history of the case and the numerous
continuances and resettings that preceded the motion.  Finally, while a court may consider lack of
prejudice to the opposing party in ruling on a motion for continuance, it is
not the other party=s burden to establish an absence of prejudice before the court
may deny the motion.

We
conclude the trial court did not clearly abuse its discretion by refusing to
grant Roberts=s motion for continuance. 
Accordingly, we overrule Roberts=s first issue.

                                              B.  Did Roberts Raise a Fact Issue?








In
her second issue, Roberts claims the trial court erred in granting a
no-evidence summary judgment in the face of her APreliminary Response@ to GM=s motion.  GM initially
contends this evidence should not be considered part of the summary judgment
record because the rules require the nonmovant to file affidavits or other
written response no later than seven days before the hearing, A[e]xcept
on leave of court.@  Tex. R. Civ. P. 166a(c). 
Although the motion was set for submission on March 30, 1998, Roberts
did not file her response until March 27. 
GM claims the record does not show the court gave Roberts leave to file
her response only three days before the submission date.  We note, however, the trial court=s
docket sheet contains an entry stating: A[Plaintiff]=s Mot[ion] for 2 weeks cont.: Granted until April 13, 1998.@[4]  We believe this docket
entry, dated the same day the court granted GM=s motion for summary judgment, indicates Aleave
of court@
was, in fact, given to file Roberts=s March 27 response as part of the summary judgment record.

Roberts
claims the evidence she presented with her March 27 response precluded summary
judgment for GM.  When reviewing the
grant of a no-evidence summary judgment, we review the evidence in the light
most favorable to the nonmovant and disregard all evidence and inferences to
the contrary.  Lampasas v. Spring
Ctr., Inc., 988 S.W.2d 428, 432 (Tex. App.CHouston [14th Dist.] 1999, no pet.).  A no‑evidence summary judgment is
improperly granted if the nonmovant counters with more than a scintilla of
probative evidence to raise a genuine issue of material fact.  Id. 
More than a scintilla of evidence exists when the evidence Arises
to a level that would enable reasonable and fair‑minded people to differ
in their conclusions.@  Merrell Dow Pharms.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997) (quoting Transportation
Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex.1994)).

In
her March 27 response, Roberts pointed to the following as evidence that
created a fact issue, precluding summary judgment: (1) the affidavit of Stephen
M. Arndt, Roberts=s expert on accident reconstruction; (2) Roberts=s
deposition; and (3) the documents referred to by Arndt.  With respect to Roberts=s
deposition, we note the record does not reflect that a copy of this deposition
was filed along with Roberts=s March 27 response or at any time before the submission date
of March 30.  Even if it were, Roberts
did not direct the trial court to any excerpts or portions of the deposition
that might establish facts supporting the existence of a defect or causation.  Thus, Roberts=s deposition did not raise an issue of material fact on either
element.  See Walton v. City of
Midland, 24 S.W.3d 853, 858 (Tex. App.CEl Paso 2000, no pet.) (finding summary judgment was proper
where nonmovant attached some 500 pages of depositions and other evidence to
his response without directing the court to specific evidence raising a fact
issue).








We
next look to Stephen Arndt=s affidavit, which was attached to Roberts=s
March 27 response.  In his affidavit,
Arndt expresses the following Apreliminary opinion@ about Linda Roberts=s death:

Based upon reasonable scientific, engineering certainty, it is
my opinion that Ms. Roberts received fatal injuries in such crash at least in
part because of how the restraint system fit her.  Ms. Linda Roberts, who was a short adult,
being only 5 feet 2 inch tall, had her lap/shoulder restraint on at the time of
the crash, as she sat in the left-rear seat. 
Ms. Roberts received fatal injuries to her chest, stomach and neck,
which are consistent with a poor fitting restraint.  These types of injuries can occur if the
restraint system is not designed to route over the body in a manner that keeps
the lap belt on the pelvis and the shoulder harness over the shoulder and off
the neck.  A proper fitting restraint for
short statured adults can be achieved by the correct positioning of the lap
belt anchor points and providing an ability to adjust the shoulder harness
routing to achieve proper fit for a range of occupant sitting heights.

We
conclude this affidavit does not present probative evidence of the existence of
a defect or causation.  According to
Arndt, Linda Roberts=s injuries Aare consistent with@ a poor-fitting restraint system, and similar injuries can be
caused by a poorly designed restraint. 
However, it does not logically follow, and Arndt=s
affidavit does not establish, that Linda Roberts=s restraint system fit poorly because it was designed
poorly.  While a plaintiff can establish
the existence of a defect using circumstantial evidence, there must be evidence
of proper use of the goods together with a malfunction.  See Plas-Tex, Inc. v. U.S. Steel
Corp., 772 S.W.2d 442, 444-45 (Tex. 1989). 
Because Roberts failed to present any summary judgment evidence that
Linda Roberts used her restraint system properly, she has not raised a fact
issue concerning the existence of a defect. 
See id. at 444. 
Furthermore, because Arndt attributed Linda Roberts=s
injuries to a poor-fitting restraint system, he failed to provide any causal
link between her injuries and a defectively designed restraint system.








Finally,
Roberts claims Athe documents referred to by Mr. Arndt@
created a fact issue as to liability and causation.  In his affidavit, Arndt stated he reviewed Apreliminary
photographs, the police report, medical records, death certificate, certain
[GM] documents, excerpts from the Owner=s Manual, the deposition of Berry Roberts, and other
information concerning [the Firebird].@  However, of these
documents, the only ones that appear in the record as attachments to Roberts=s
March 27 response are the two-page police report of the accident and Linda
Roberts=s
death certificate.  Neither of these
documents provide any evidence that the Firebird=s restraint system was defective or that this alleged defect
caused Linda Roberts=s injuries. 

Roberts
contends we should also consider the summary judgment evidence she filed on May
22, 1998, the same day the trial court granted summary judgment, as well as
evidence she submitted in connection with her motion for rehearing and in
opposition to a summary judgment motion filed by GM=s
co-defendant.  It is undisputed that none
of this evidence was on file on March 30, the submission date for GM=s
motion.  In ruling on a motion for
summary judgment, the trial court may only consider evidence Aon
file at the time of the hearing, or filed thereafter and before judgment with
permission of the court.@  Tex. R. Civ. P. 166a(c). 
There is nothing in the record to indicate the trial court gave Roberts
permission to file this evidence in response to GM=s
motion.  A trial court does not abuse its
discretion by refusing to consider summary judgment evidence filed after the
date for submission.  See Abdel-Fattah
v. PepsiCo, Inc., 948 S.W.2d 381, 385 (Tex. App.CHouston
[14th Dist.] 1997, no writ).

We
conclude the trial court properly refused to consider any evidence filed by
Roberts after the submission date on GM=s motion for summary judgment. 
Even considering the summary judgment evidence Roberts submitted just
three days before the March 30 submission date, Roberts did not raise a fact
issue as to the existence of a defect and causation, two essential elements of
her breach-of-warranty claims. 
Accordingly, we overrule Roberts=s second issue.








                                                       C.  Motion for New Trial

In her third issue, Roberts asserts the trial court erred in
refusing to grant a rehearing and new trial after the granting of the
no-evidence summary judgment in favor of GM. 
Roberts=s sole argument is that she is entitled to a rehearing or new
trial under the Craddock test because she acted in good faith, her
failure to file a timely evidentiary response was not the result of conscious
indifference, and the granting of a rehearing or new trial would occasion no
delay or otherwise work an injury to GM. 
See Craddock, 133 S.W.2d at 126.  As we note above, however, our supreme court
has recently held Craddock does not apply to a motion for new trial
following a summary judgment when the nonmovant had an opportunity to request
either leave to file a late response or a continuance.  See Carpenter, 45 Tex. Sup. Ct.
J. at 1033.  Here, Roberts clearly had
notice of the March 30 submission date and, in fact, filed a motion for
continuance in advance of that date. 
Accordingly, Craddock does not apply to Roberts=s
motion for new trial following the no-evidence summary judgment.  Instead, we review the trial court=s
ruling for an abuse of discretion.  See
Superior Packing, Inc., 880 S.W.2d at 71.  Roberts=s argument only addresses the trial court=s
failure to apply Craddock, and she presents nothing to suggest the trial
court otherwise abused its discretion. 
We overrule Roberts=s third issue.

                                                      D.  Constitutional Claims

Finally,
Roberts contends in her fourth issue the no-evidence summary judgment rule, as
applied to her claims, violates the following provisions of the Texas
Constitution: the open-courts provision, Tex.
Const. art. I, ' 13; the right to trial by jury, Tex. Const. art. I, ' 15; and the due-course-of-law provision, Tex. Const. art. I, '
19.  For various reasons, we reject
Roberts=s
constitutional challenges.








                                                                1.  Open Courts

Roberts claims Rule 166a(i) violates the open-courts provision in
article I, section 13 of the Texas Constitution.[5]  For this provision to apply, however, Roberts
must (1) have a cognizable common-law claim that is being restricted and (2)
show that the restriction is unreasonable or arbitrary when balanced against
the statute=s purpose.  See Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 902-03 (Tex. 2000).  As Roberts admits in her brief, the only
claims remaining in the suit are for wrongful death and survival damages.  These actions are permitted only by statute,
and thus Roberts has no common-law right to bring them.  See Bala v. Maxwell, 909 S.W.2d
889, 893 (Tex. 1995) (per curiam). 
Accordingly, Roberts cannot establish an open-courts violation.  See id.

                                                                2.  Trial by Jury








Roberts
also complains Rule 166a(i) as applied to her claims violates her right to a
trial by jury as set forth in article I, section 15.[6]  In civil cases, the constitutional right to a
jury trial is not absolute, but rather is regulated by those rules that specify
its availability.  See Green v.
W.E. Grace Mfg. Co., 422 S.W.2d 723, 725 (Tex. 1968).  Although not clearly articulated in her
brief, Roberts apparently contends she was improperly subjected to a Atrial
by affidavit@ in the place of a jury trial. 
Under Rule 166a(i), after adequate time for discovery, the court can
grant summary judgment against a party that fails to produce summary judgment
evidence raising a genuine issue of material fact on one or more essential elements
of a claim.  Tex. R. Civ. P. 166a(i). 
To avoid summary judgment, the nonmovant is not required to marshal its
proof; rather, its response need only point out evidence that raises a fact
issue on the contested elements.  Tex. R. Civ. P. 166a cmt.  In the absence of a material fact issue,
there is nothing to submit to a jury, and the granting of summary judgment does
not deprive the losing party of its constitutional right to a jury trial.  Lattrell v. Chrysler Corp., 79 S.W.3d
141, 150 (Tex. App.CTexarkana 2002, no pet. h.); Carrabba v. Employers Cas. Co.,
742 S.W.2d 709, 716-17 (Tex. App.CHouston [14th Dist.] 1987, no writ); see also Macklin
v. City of New Orleans, 293 F.3d 237, 241 (5th Cir. 2002) (per curiam)
(describing as Apatently frivolous@ a claim that summary judgment proceedings conflict with the
constitutional right to trial by jury); Nathan L. Hecht, Opening Remarks to
Symposium on Emerging Professional Responsibility Issues in Litigation, 41 S. Tex. L. Rev. 3, 4 (1999) (noting
that Texas=s adoption of the no-evidence summary judgment rule Abrings
Texas in line with the practices of the federal courts@).  The trial court=s application of Rule 166a(i) did not violate Roberts=s
right to trial by jury.

                                                          3.  Due Course of Law








Finally,
Roberts asserts the trial court=s application of Rule 166a(i) violated the constitution=s
due-course-of-law provision.[7]  Roberts relies on Clem v. Evans, 291
S.W. 871 (Tex. Comm=n App. 1927, holding approved), in which the court struck down
a fraud statute in violation of the due-course provision.  In Clem, the statute in question
stated that, for certain types of promises, a person who made a promise and
then failed to comply within a reasonable time was presumed to have committed
fraud unless he or she established that non-compliance resulted from Athe
act of God, the public enemy or by some equitable reason.@  Id. at 871-72.  The Texas Commission of Appeals held that, by
imposing a presumption of fraud that could only be overcome as specified, the
statute denied those accused of fraud of their right to prove, as a complete
defense, that they had no intent to defraud when the promise was made.  Id. at 872.  Roberts claims the no-evidence summary
judgment rule deprived her of a fair and reasonable opportunity to rebut the Aunfair
and overly burdensome presumption against [her] case.@  Unlike the statute in Clem, however,
Rule 166a(i) imposes no presumption against Roberts, nor does it deny her any
rights with respect to her claims, on which she bears the burden of proof.  Roberts asserts only that Rule 166a(i)
subjected her to a Atrial by affidavit.@  However, Rule 166a(i)
does not require the nonmoving party to establish its right to relief, but
merely present summary judgment evidence sufficient to raise a fact issue.  Roberts has failed to establish a violation
of article I, section 19.

We
conclude that Rule 166a(i), as applied to Roberts=s claims, does not violate the open-courts, trial-by-jury, or
due-course provisions of the Texas Constitution.  We overrule Roberts=s
fourth issue.

                                                           IV.  Conclusion

Finding
no error in either summary judgment granted by the trial court, we affirm the
court=s
judgment.

 

 

 

 

/s/        Joe
L. Draughn

Senior Justice

 

 

 

 

Judgment rendered and Opinion filed August
22, 2002.

Panel consists of Justices Seymore and
Guzman and Senior Justice Draughn.[8]

Do Not Publish C
Tex. R. App. P. 47.3(b).

 

 











[1]  Joining
Roberts as a plaintiff in the trial court was Charles Finley Miller, another
passenger in the Firebird.  In addition
to GM, the lawsuit named as defendants Edwin Dean Lawrence, the driver of the
Firebird; Will Allen Lynch, the driver of the Silverado; Jimmy Banks, the
driver of a car the Firebird was allegedly attempting to pass at the time of
the accident; and Roper Motor Company, Inc., the company that sold the Firebird
to Berry Roberts=s father.  Only
Roberts and GM are parties to this appeal.





[2]  The September
11 order reads as follows:

 

ON THIS DAY came on to be heard [GM=s] Motion for Partial Summary Judgment and Brief in
Support Thereof, and Plaintiff=s Motion for New Trial, Reconsideration and Rehearing
with Regard to Partial Summary Judgment Granted in Favor of [GM], and the Court
. . . finds that GM=s Motion for Partial Summary Judgment should be, in
all things GRANTED and Plaintiff=s Motion
for New Trial, Reconsideration and Rehearing with Regard to Partial
Summary Judgment Granted in Favor of [GM] should be in all things DENIED; and,
it is therefore accordingly,

ORDERED, ADJUDGED and DECREED, that GM=s Motion for Partial Summary Judgment be and the same
is hereby GRANTED in its entirety, that judgment is hereby entered in favor of
GM as to all of Plaintiffs= strict liability and negligence claims, as to all of
Plaintiffs= claims based on breach of implied and express
warranties regarding [the Silverado] . . . , [and] that Plaintiffs take nothing
against GM regarding these claims . . . .

It is further ORDERED, ADJUDGED and DECREED, that and [sic]
Plaintiff=s Motion for New Trial, Reconsideration and
Rehearing with Regard to Partial Summary Judgment Granted in Favor of [GM]
be and the same is hereby DENIED in its entirety.





[3]  Our conclusion
is bolstered by an entry on the court=s docket
sheet stating A[Plaintiff]=s
Mot[ion] for Reconsideration: Granted.@  The trial court apparently never signed an
order ruling on Roberts=s motion for reconsideration.  We recognize a docket entry cannot take the
place of a court order.  See Pickell
v. Guaranty Nat=l Life Ins. Co.,
917 S.W.2d 439, 441 (Tex. App.CHouston [14th Dist.] 1996, no writ).  However, a docket entry may supply facts for
our consideration, provided the entry does not contradict a judicial
order.  See N-S-W Corp. v.
Snell, 561 S.W.2d 798, 799 (Tex. 1977). 
Here, the docket entry supports our conclusion that the trial court
considered Roberts=s late-filed response before granting partial summary
judgment on September 11, 1997.





[4]  Despite this
notation, no order appears in the record granting Roberts=s motion for continuance.  The court=s docket
entry cannot take the place of such an order. 
Pickell, 917 S.W.2d at 441.





[5]  AAll courts shall be open, and every person for an
injury done him, in his lands, goods, person or reputation, shall have remedy
by due course of law.@  Tex. Const. art. I, ' 13.





[6]  AThe right of trial by jury shall remain inviolate.@  Tex. Const. art. I, ' 15.





[7]  ANo citizen of this State shall be deprived of life,
liberty, property, privileges or immunities, or in any manner disfranchised,
except by the due course of the law of the land.@  Tex.
Const. art. I, ' 19.





[8]  Senior Justice
Joe L. Draughn sitting by assignment.